**Raul ORTIZ, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 14–02–01101–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 10, 2004.

James E. Lindeman, III, Houston, for Appellant.

Alan Curry, Houston, for State.

En Banc Court consists of Chief Justice HEDGES and Justices YATES, ANDERSON, HUDSON, FOWLER, EDELMAN, FROST, SEYMORE, and GUZMAN.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Raul Ortiz, was charged by indictment with murder. He was convicted by a jury of the lesser included offense of deadly conduct. The jury assessed punishment at confinement for seven years in the Institutional Division of the Texas Department of Criminal Justice and a fine of $5,000. In three points of error, appellant contends the trial court erred (1) in charging the jury on deadly conduct as a lesser included offense to murder, (2) in failing to instruct the jury to disregard the State's improper jury argument, and (3) in failing to grant a mistrial due to the State's improper jury argument. We affirm.

Cesar Ramos celebrated his sixteenth birthday at a party held on the front porch of his parents' house. Invitation to the party was by word of mouth. Although Cesar was a minor, his father permitted him to serve beer and punch "spiked" with Everclear.[1]

Monica Perez, one of Cesar's friends, arrived at the party at 6:00 p.m. with several of her friends. Appellant called Monica on her cell phone sometime after 9:00 p.m., and she told appellant she was at a party. Appellant arrived at the party with Miguel Ortiz, Roger Torres, and Robert Cervantes. Later that evening, a fight broke out between two girls. The fight was gang related, and Christine Ortuno, a friend of Monica's, was hit in the face because she was wearing a red shirt. The fight gradually escalated to a number of girls. During the melee, Cesar's friend, Anthony Hadnot, hit a guest, Anita Lopez, in the face when she allegedly attacked his girlfriend. Predictably, this spawned yet another dispute between, Anthony and Miguel Ortiz, who took umbrage at Anthony hitting a girl. Miguel then pulled out a semi-automatic pistol and pointed it at Anthony. Anthony foolishly told Miguel to shoot the gun. Miguel fired the gun in the air.

Rather than being intimidated by Miguel, the crowd grew angry and began pressing in on him. Perceiving they had overstayed their welcome, appellant, Miguel, Roger, and Robert retreated to appellant's car. As appellant drove away from the party, his car was showered with bottles thrown by the crowd. Appellant drove approximately one or two blocks, stopped the car, opened the driver's side door, pulled out a pistol, and fired several shots. Appellant then closed the door and drove away.

---

1. Everclear is 190–proof grain alcohol. *State v. Rohm*, 609 N.W.2d 504, 507 (Iowa 2000). It is common knowledge that its ingestion may, in large doses, be fatal. *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 693 (Tenn.1984).

As the car drove away, Cesar noticed his younger brother, Edwin, laying on the ground. Edwin told Cesar that someone had hit him and raised his shirt. Cesar saw a "lump" on the surface of Edwin's stomach. Cesar and another person helped Edwin into the house where they laid him on a sofa. When Edwin started throwing up, they turned him over and discovered a bullet hole in his back. An ambulance was summoned, and although Edwin was still alive when the patrol officers arrived, he died shortly after being transported from the scene. The medical examiner testified that Edwin died of a gunshot wound to the chest. The bullet entered on the lower part of the left side of the chest, almost towards the back, lodging just under the skin on the right side of the chest.

The patrol officers recovered 3 spent nine-millimeter casings (two Eldorado casings and one Winchester) in the street about a block from the Ramos house. The officers also held those individuals who were still at the scene and separated witnesses for the purpose of taking statements. Officer Todd Miller of the Houston Police Department homicide division was able to develop a suspect. After obtaining appellant's name, Miller compiled a photo array, which included appellant's picture. Miller showed the photo array to Cesar and Monica; both identified appellant. Miller then obtained an arrest warrant for appellant. Appellant was arrested several days later at school.

After being advised of his legal rights, appellant waived those rights and agreed to make a formal statement. Appellant told police that when several people started throwing bottles at his car, Miguel pulled out a gun and pointed it at someone. Miguel then got in the car. When people continued throwing bottles at the car, Miguel stuck the gun outside the window and fired several shots. Appellant then drove the car a short distance away where he stopped. Appellant said that after he stopped the car, Miguel fired several more shots from the car. Appellant claimed that Miguel was the only person in the car with a gun.

Miller then separately interviewed Roger Torres and Robert Cervantes, who were in the car with appellant on the night of the shooting. Both Roger and Robert told Miller that appellant also fired shots from the car. Confronted with this discrepancy, appellant altered his account of what happened.

In his second statement, appellant admitted that after stopping the car, he retrieved a gun from under the seat. He claims he then fired two shots into the air. He reiterated, however, that Miguel fired his own pistol several more times directly into the crowd. The police subsequently recovered appellant's weapon, a 9 mm High Point, from his home. Thereafter, the police also recovered Miguel's weapon, a 9 mm Taurus.

The bullet recovered from the body of Edwin Ramos had insufficient land and groove impressions to positively link it to a weapon. However, ballistics tests eliminated Miguel's 9 mm Taurus as the murder weapon because test firings of that pistol produced well defined land and groove impressions that were not consistent with the faint impressions found on the bullet recovered from Edwin's body. The only other weapon fired at the scene of the murder was appellant's 9 mm High Point. Test firings of that weapon revealed that it made only very faint land and groove impressions. Because the land and groove impressions were so muted, the State's firearms examiner was not able to positively identify appellant's pistol as the murder weapon. However, because Miguel's weapon could not have fired the

bullet recovered from the victim's body, circumstances strongly suggested that appellant fired the fatal shot.

Appellant was charged by indictment with murder. Included in the jury charge, however, was an instruction on the lesser included offense of deadly conduct. In his first point of error, appellant contends the trial court erred in submitting a charge on deadly conduct because the instruction does not meet the two-pronged test established in *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993). We find appellant's contention is without merit for a variety of reasons.

First, the etiology of the court's charge is not contained in the record before us. The record contains no suggestion as to why or how the deadly conduct instruction was included in the charge, and we have no way of discerning whether the instruction was requested by appellant's counsel, the prosecutor, or was included *sua sponte* by the trial court. It is well-established that a defendant cannot complain of error where he requested the charge given to the jury. *Gutierrez v. State,* 659 S.W.2d 423, 424 (Tex.Crim.App. 1983); *Hernandez v. State,* 808 S.W.2d 536, 545 (Tex.App.-Waco 1991, no pet.); *Henry v. State,* 732 S.W.2d 443, 444 (Tex. App.-Beaumont 1987, no pet.). Thus, *if* appellant requested the charge at issue, no error is presented. Accordingly, appellant

has failed to develop a record demonstrating the error being complained of on appeal.

We are aware that the Texas Court of Criminal Appeals has, in very broad language, absolved the defendant of presenting a record that demonstrates error. *Rowell v. State,* 66 S.W.3d 279, 281 (Tex.Crim.App.2001). There the court observed, "the appellant once bore the burden of presenting a record that demonstrated error, but the rule that so burdened him was revised in 1997." *Id.* Thus, the "current Rules do not assign a burden to either party, so the appellant could not have failed to satisfy it." *Id.* Despite this sweeping pronouncement, we do not believe the court intended so drastic a change in our jurisprudence as the literal language of its holding would suggest.

Under Rule 50(d) of the former rules of appellate procedure, the "burden [was] on the appellant, or other party seeking review, to see that a sufficient record [was] presented to show error requiring reversal."[2] Although simple in its terms, the rule was routinely cited for two distinctly different principles: (1) the party seeking review had the burden to *develop* a record demonstrating error in the court below, and (2) the party seeking review had the burden to *deliver* a record demonstrating error in the court below.[3] It is clear under

**2.** Tex.R.App. P. 50(d) (repealed September 1, 1997).

**3.** For example, in some cases Rule 50(d) was cited for the proposition that if the appellant did not develop the record by way of an objection, bill of exception, motion for new trial, etc. to show that an error had been committed in the trial court, nothing was preserved for review. *See, e.g., Giesberg v. State,* 945 S.W.2d 120, 128 (Tex.App.-Houston [1st Dist.] 1996), *aff'd,* 984 S.W.2d 245 (Tex. Crim.App.1998) (appellant failed to show in his bill of exception what the witness would

have testified to); *Guzman v. State,* 923 S.W.2d 792, 795 (Tex.App.-Corpus Christi 1996, no pet.) (appellant failed to offer enough evidence of incompetency in the trial court to demonstrate any error); *Lape v. State,* 893 S.W.2d 949, 960 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (defendant complained that trial court erred in excluding video tape, but did not offer it when making bill of exception); *Sonnier v. State,* 846 S.W.2d 406, 408 (Tex.App.-Houston [14th Dist.] 1992), (pet. granted, vacated) (defendant failed to introduce any part of his trial record at his habeas hearing); *Elam v. State,*

the new rules of appellate procedure that the "trial and appellate courts are jointly responsible for ensuring that the appellate record is timely filed." Tex.R.App. P. 35.3(c). Accordingly, the appellant is absolved of his former burden of transporting, delivering, filing, etc. the record with the appellate court. However, it is inconceivable that the appellant has also been relieved of his burden of developing a sufficient record in the trial court to demonstrate reversible error on appeal. For example, the new rules of appellate procedure still require preservation of error, *i.e.*, "the record must show ... by timely request, objection, or motion" that the trial court erred. Tex.R.App. P. 33.1. The rules also provide a procedure for perfecting a formal bill of exception. Tex.R.App. P. 33.2. Further, the Rules of Evidence require the proponent of evidence to make an offer of proof when the trial court excludes the evidence at issue. Tex.R. Evid. 103. None of these rules would be necessary if an appellant could obtain a reversal by making hypothetical assertions that error, not affirmatively reflected in the record, *might* have been committed in the court below.

■ Accordingly, we hold the repeal of the former rules of appellate procedure does not absolve appellant of his burden of presenting a record to show error requir-

ing reversal insofar as he is required to *develop* the record to show the nature and source of an error and, in some cases, its prejudice to him. Here, appellant has failed to present us with a record reflecting which party requested the instruction at issue. Because it is possible that appellant requested the instruction, no error is presented. When a defendant requests a charge, and the court submits it, he can not complain of that charge on appeal. *Tucker v. State,* 771 S.W.2d 523, 534 (Tex. Crim.App.1988). Even if the charge is later found to be erroneous, the accused cannot first invite error and then complain about it on appeal. *Id.* Thus, the record does not affirmatively demonstrate error requiring reversal.

■ Similarly, appellant has failed in his burden of presenting a record demonstrating the existence of "egregious harm" as required for reversal by *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). Here, appellant did not object to the lesser included offense charge—in fact, he affirmatively approved it. Prior to presenting the charge to the jury, the trial court made the following inquiry of appellant's counsel:

THE COURT: ... Mr. Lindeman [appellant's counsel], I had also given you the proposed charge of the Court on guilt or innocence, have you had sufficient time to review it, sir?

841 S.W.2d 937, 940 (Tex.App.-Austin 1992, no pet.) (newspaper advertisement upon which defendant relied to show trial judge was disqualified from sitting was not introduced in evidence).

In contrast, other courts cited Rule 50(d) for an appellant's failure to physically deliver a sufficient record to the appellate court by failing to include exhibits, motion hearings, pleadings, etc. in the appellate record. *See, e.g., Burks v. State,* 904 S.W.2d 208, 209 (Tex. App.-Fort Worth 1995, no pet.) (appellant brought only a partial record up on appeal); *Applewhite v. State,* 872 S.W.2d 32, 33 (Tex. App.-Houston [1st Dist.] 1994, no pet.) (appel-

lant did not bring up court reporter's record from a bond reduction hearing); *Edwards v. State,* 850 S.W.2d 731, 736 n.3 (Tex.App.-El Paso 1993, no pet.) (defendant failed to include record from motion to suppress hearing); *Harvey v. State,* 798 S.W.2d 373, 375 (Tex.App.-Beaumont 1990, no pet.) (conviction was affirmed where appellant failed to include an exhibit in the appellate record); *Pike v. State,* 758 S.W.2d 357, 365 (Tex.App.-Waco 1988), *vacated,* 772 S.W.2d 130 (Tex. Crim.App.1989) (neither tape recording of conversation between appellant and undercover officer nor transcription was part of record on appeal).

MR. LINDEMAN: I have, Your Honor.

THE COURT: You have any objections to the charge?

MR. LINDEMAN: Your Honor, I'd like to see if the wording could be added into the charge relating to 3822 in that it's not so much on the issue on C

[The court and the parties discussed whether appellant was entitled to an instruction under Article 38.22 of the Code of Criminal Procedure regarding coercion of his statement by the police.]

MR. WINDHAM [the State's attorney]: I believe that matter is covered in the very first paragraph where it asks that: "If it appears that the same was freely and voluntarily made without compulsion or persuasion." And I think for the Court to add the language that counsel is asking [for] would be a comment by the Court on the weight of the evidence.

THE COURT: Yes, I agree with the State, it would be a comment. You can't have something done voluntarily if you're coerced into doing it. So that request is denied, sir.

MR. LINDEMAN: None other, Your Honor, I'm fine with it other than that.

THE COURT: So, there's no additional requests and no objections to the charge?

MR. LINDEMAN: Correct, Your Honor.

■ When there is jury-charge error, whether objected to or not objected to, the standard for assessing harm is controlled by *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim.App.1984). *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004). Because an affirmative denial of objection is not a timely objection, it must be governed by the rules for failure to object. *Id.* Accordingly, appellant may raise such

unobjected-to charge error on appeal, but may not obtain a reversal for such error unless it resulted in egregious harm. *Id.*

Here, the evidence shows appellant and Miguel both fired 9 mm pistols. The victim was struck by a bullet that could *not* have been fired from Miguel's weapon. Circumstantial evidence, therefore, strongly suggests the fatal bullet was fired by appellant. Appellant was indicted for the first degree felony of murder. Although the evidence would have supported a conviction for murder, the inclusion permitted the jury to convict appellant of the third degree felony of deadly conduct. The charge was thus beneficial to appellant. Accordingly, no "egregious harm" and, thus, no reversible error is presented.

■ Finally, even if we were to consider the merits of appellant's argument, his contention fails because deadly conduct is, in fact, a lesser included offense of murder. Appellant asserts the deadly conduct instruction was error because the offense did not meet the two-pronged test of *Rousseau*. In other words, the State failed to show that (1) deadly conduct is included within the proof necessary to commit murder, and (2) there is some evidence that, if guilty, appellant was guilty only of deadly conduct. We disagree.

The first prong of the *Rousseau* test is jurisdictional. It is well settled that a valid indictment or information is essential to a trial court's jurisdiction in a criminal case. *Garcia v. Dial*, 596 S.W.2d 524, 527 (Tex.Crim.App.1980). Thus, a court has no authority to convict a defendant except for the offense charged or some lesser included offense of the crime charged. *McLeod v. State*, 56 S.W.3d 704, 708 (Tex. App.-Houston [14th Dist.] 2001, no pet.). An offense is a lesser included offense if (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; (2)

it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission; (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or (4) it consists of an attempt to commit the offense charged or an otherwise included offense. Tex.Code Crim. Proc. Ann. art. 37.09 (Vernon 1981). The legislature has not established any other test for inclusion in the charge; rather, juries are authorized to find a defendant "guilty of *any* lesser included offense." Tex.Code Crim. Proc. Ann. art. 37.08 (Vernon 1981) (emphasis added).

The second prong of the test demonstrates the existence or non-existence of prejudice to the appellant if his request for a lesser included offense charge is denied. When a defendant properly requests a jury instruction, and such instruction is erroneously denied by the trial court, the error "will call for reversal as long as the error is not harmless." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). In short, "there must be *some* harm to the accused." *Id.* In the context of a request for a charge on a lesser included offense, this burden is met merely by showing that some evidence was presented that if guilty, the defendant was guilty only of the lesser included offense. Unless such evidence

was presented, the jury could not rationally find the defendant guilty of the lesser included offense, and there is no harm stemming from exclusion of the charge.

Conceptually, therefore, the first prong must be met before *granting* a lesser included offense instruction; the second prong must be met before predicating reversible error on the *denial* of such an instruction. Nevertheless, the Court of Criminal Appeals has held the State must satisfy *both* prongs of *Rousseau* to avoid error in the *granting* of a request for a lesser included offense charge. *Arevalo v. State,* 943 S.W.2d 887, 890 (Tex.Crim.App. 1997).[4] Accordingly, as an intermediate court, we must consider whether both prongs of *Rousseau* are satisfied in the record before us.

Regarding the first prong, appellant contends deadly conduct can never be a lesser included offense of murder because it is not included within the proof necessary to establish murder. Indeed, this court has so held. *See Moreno v. State,* 38 S.W.3d 774, 779 (Tex.App.-Houston [14th Dist.] 2001, no pet.). In *Moreno,* we held that deadly conduct is committed by acts "that fall short of harming another." Accordingly, "if injury actually occurs from appellant's deliberate conduct," then, *ipso facto,* the act constitutes more than deadly

---

**4.** The rationale articulated by the Court of Criminal Appeals for the second prong of *Rousseau* is that a request for a lesser included offense charge by the State (when there is no evidence to show that the defendant, if guilty, is guilty only of the lesser included offense), would invite the jury to return an unwarranted verdict not supported by the evidence. *Arevalo,* 943 S.W.2d at 889. However, it has always been the privilege of the sovereign to choose the severity of the offense it will undertake to prove. If, in an extreme example, the defendant murdered his victim and left him lying on the sidewalk, the State would have the prerogative, if it so desired, of

prosecuting him for nothing more than littering. Accordingly, prior to *Arevalo,* it was well-established that an accused could not "complain that he was charged, tried or convicted for a lesser included offense rather than the higher or greater offense." *Williams v. State,* 170 Tex.Crim. 593, 342 S.W.2d 581, 582 (1960). This venerable principle rested not on the state of the evidence, but, rather, on the inherent power of the sovereign to selectively enforce its statutes. In light of *Arevalo,* it is now uncertain whether the State must, in every instance, prosecute a defendant for the most severe offense the evidence will support.

conduct.[5] Of course, this is precisely why deadly conduct is a lesser included offense of murder, *i.e.*, because "it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission." Tex. Code Crim. Proc. Ann. art. 37.09(2). In addition to being poorly reasoned, as a plurality opinion, *Moreno*'s precedential value is uncertain. *See Cooper v. State*, 67 S.W.3d 221, 224 (Tex.Crim.App.2002) (holding a plurality opinion has limited or no precedential value).

Moreover, the principle upon which *Moreno* rests, *i.e.*, that deadly conduct is not committed "if injury actually occurs from appellant's deliberate conduct," was refuted two weeks later by this court in *Ford v. State*, 38 S.W.3d 836 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). In *Ford*, we held that deadly conduct was a lesser included offense of aggravated assault even though the victim was seriously injured when he was stabbed or cut by a knife-wielding defendant. *Id.* at 844–46.

Under the indictment presented here, appellant was charged with two different manner and means of committing the offense of murder. Thus, under the State's pleadings it was required to show that appellant either: [6]

(1) intentionally or knowingly

(2) caused the death

(3) of Edwin Ramos

(4) by shooting him with a firearm

or

(1) intended to cause serious bodily injury to Edwin Ramos and

(2) intentionally or knowingly committed an act clearly dangerous to human life

(3) that caused the death of Edwin Ramos

(4) namely, shooting him with a firearm

Tex. Pen.Code Ann. § 19.02(b)(1) & (2) (Vernon 1994). In light of the charge submitted to the jury, the elements of deadly conduct are satisfied here by showing the defendant:

(1) knowingly

(2) discharged a firearm

(3) at or in the direction of

(4) one or more individuals

*See* Tex. Pen.Code Ann. § 22.05(b)(1) (Vernon 1994).

■ A firearm is a deadly weapon per se. Tex. Pen.Code Ann. § 1.07(a)(17) (Vernon 1994). Thus, shooting a firearm at or in the direction of another person can only be characterized as an act that is clearly dangerous to human life. Accord-

---

**5.** This same reasoning was employed by our sister court in *Walker v. State*, 994 S.W.2d 199, 203 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). There the court held, "If injury actually occurs from appellant's deliberate conduct, the act of shooting towards the victim constitutes more than deadly conduct." *Id. Walker*, however, is not controlling authority and, for reasons stated elsewhere in this opinion, we do not find it persuasive.

**6.** The pertinent provisions of the State's indictment provide that appellant:

... on or about November 3, 2001, did then and there intentionally and knowingly cause the death of Edwin Ramos, hereinaf-

ter called the Complainant, by shooting the Complainant with a deadly weapon, namely a firearm.

It is further presented that in Harris County, Texas, Raul Ortiz, hereinafter styled the Defendant, heretofore on or about November 3, 2001, did then and there unlawfully intend to cause serious bodily injury to Edwin Ramos, hereinafter called the Complainant, and did cause the death of the Complainant by intentionally and knowingly committing an act clearly dangerous to human life, namely by shooting the Complainant with a deadly weapon, namely a firearm.

ingly, deadly conduct is distinguished from murder under the facts of this case only by relieving the State of proving (1) an intentional act and (2) the death of an individual. Under the facts and pleadings presented here, deadly conduct satisfies the first prong of *Rousseau* in that it was included in the proof necessary to establish the offense of murder.[7] *See* Tex.Code Crim. Proc. Ann. art. 37.09.

As for the second prong of *Rousseau*, appellant told the police that he fired his pistol two times in the air.[8] It is unclear from appellant's statement whether he fired his weapon straight up, *i.e.*, ninety degrees above the horizon, or whether he fired his weapon "in the air" above the crowd, *i.e.*, five or ten or degrees above the horizon. Cesar Ramos testified that when appellant's car stopped, the driver's side door opened, and shots were fired from the vehicle, but no one got out of the car. Thus, the circumstances suggest that if appellant is to be believed, he did not fire straight up, but rather above the heads of the crowd, *i.e.*, in the direction of one or more individuals. Thus, a rational jury could conclude that appellant did not intend to commit serious bodily injury, but due to his poor aim or the falling trajectory of a bullet fired a block or more away, the victim was nevertheless fatally injured.

Accordingly, we find there is some evidence in the record which, if believed, would show that appellant is guilty only of the lesser included offense of deadly conduct.[9] Appellant's first point of error is overruled.[10]

7. While deadly conduct *may* be a lesser included offense of murder, it is not necessarily a lesser included offense of murder in all cases. "The determination of whether an offense is a lesser included offense must be done on a case-by-case basis because Article 37.09 defines lesser included offenses 'in terms of the offense charged and ... in terms of the facts of the case.' " *Jacob v. State*, 892 S.W.2d 905, 907 (Tex.Crim.App.1995) (quoting *Day v. State*, 532 S.W.2d 302, 316 (Tex. Crim.App.1975)). For example, deadly conduct by shooting a firearm in the direction of one or more individuals could not be a lesser included offense of murder where the defendant is alleged to have killed the victim by stabbing him with a knife.

8. Officer Miller: Okay, so what happens next?

Raul Ortiz: And then we go, we go straight and then—and then I turned around and I go B we go straight we drove about—about a block I say—
Officer Miller: And you stop the car?
Raul Ortiz: And ah—naw I do—I left it on drive—I just put the brakes—and I was just looking out—I was tripping—I say man—cause in my mind you know—cause what they got me into—and they hit my car and that's what made me mad and so I shot, I shot my gun two times in the air.

9. We recognize that at least one court of appeals has concluded that deadly conduct can never satisfy the second prong of *Rousseau* in a murder case. For example, in *Ramirez v. State*, 976 S.W.2d 219, 227 (Tex. App.-El Paso 1998, pet. ref'd), the Eighth Court of Appeals held that where the victim is killed, "the evidence cannot support a rational inference by the jury that Appellant was guilty only of deadly conduct." *Id.* In other words, the court held that where the victim is killed, no rational jury could find that if guilty, the defendant was guilty only of deadly conduct. However, a person satisfies the elements of deadly conduct even if he knowingly discharges a firearm directly at an individual. Tex. Pen.Code Ann. § 22.05(b)(1). Whether the shot is fired point blank into the victim is irrelevant. Whether the victim is hit, injured, or killed is of no moment. Whether the defendant could, and perhaps should be prosecuted for murder, is unimportant—the elements of deadly conduct are satisfied. Accordingly, we are not persuaded that a jury acts irrationally if it convicts a defendant of deadly conduct where the evidence shows the victim has died.

10. Appellant, without explanation, also cites *Gallegos v. State*, 548 S.W.2d 50 (Tex.Crim. App.1977) as authority for his assertion that deadly conduct cannot be a lesser included offense if the victim is injured. *Gallegos*

In his second and third issues, appellant contends the trial court erred in failing to instruct the jury to disregard the State's improper jury argument after the State commented on his failure to testify and in failing to grant a mistrial based on the same improper argument. Police recovered a Lorcin pistol clip in appellant's car. The clip did not fit either appellant's High Point or Miguel's Taurus pistol. Appellant complains of the following statement by one of the prosecutors during the State's closing argument:

> We have three guns. We have a Taurus. We have the High Point, and we have the Lorcin. We know that bullet did not come from the Taurus. All the experts said that. The Taurus leaves two [sic] clear markings. This bullet does not have those markings on it. The Taurus is eliminated. So that leaves the High Point or the Lorcin.
>
> Lorcin, there was never a Lorcin recovered. Why?
>
> Because there never was a Lorcin in the car that night.
>
> How do we know that?
>
> The testimony. Testimony from the three people you heard from that were in the car. If there was third gun in there the way the fingers are being pointed, you would have heard about it. If there's a Lorcin in that car that could have been blamed for that killing, Raul would have said it.

MR. LINDEMAN [Appellant's attorney]: Objection, Your Honor. I object to the reference to my client's failure to testify, and I ask that the jury be instructed to disregard.

THE COURT: You're so instructed.

MR. LINDEMAN: And I would ask for a mistrial.

THE COURT: Denied.

MR. GIESE [State's attorney]: Raul's statements, he would have said in his statement that somebody fired a gun other than Miguel and himself.

For a prosecutor's argument to violate the defendant's right against self-incrimination and be reversible error, the argument must do more than merely imply or indirectly allude to the defendant's failure to testify; the argument must be manifestly intended or be of such a character that the jury would necessarily and naturally take it as a comment on the accused's failure to testify. *Brown v. State*, 92 S.W.3d 655, 665 (Tex.App.-Dallas 2002), *aff'd*, 122 S.W.3d 794 (Tex.Crim.App.2003). It appears, when examined in context, that the prosecutor's argument was in reference to statements made by appellant that had been introduced into evidence. Accordingly, the argument was not erroneous and did not constitute a comment on appellant's failure to testify. *See Varughese v. State*, 892 S.W.2d 186, 191 (Tex.App.-Fort Worth 1994, pet. ref'd) (holding reference to what defendant said in a recorded statement is not a comment on his failure to testify); *Bethel v. State*, 842 S.W.2d 804, 808 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (holding that reference to statement made by the defendant to police is not a comment on his failure to testify).

Appellant's second and third points of error are overruled. The judgment of the trial court is affirmed.

holds that reckless conduct is a lesser included offense of assault and, therefore, assault cannot be a lesser included offense of reckless conduct. We fail to see how this holding supports appellant's contention.