pd-0907-17
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 3/7/2018 10:09 AM
Accepted 3/7/2018 12:25 PM
DEANA WILLIAMSON
CLERK

ORAL ARGUMENT GRANTED.

## Case No.: PD-0907-17

FILED
COURT OF CRIMINAL APPEALS
3/7/2018
DEANA WILLIAMSON, CLERK

# IN THE COURT OF CRIMINAL APPEALS

# OF TEXAS

**CHRISTOPHER ERNEST BRAUGHTON, JR.**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee.**

Decided in the 228th Judicial District Court of Harris County, Texas
Trial Court Cause Number: 1389139, The Honorable Marc Carter, Presiding;
Appealed to the First Court of Appeals, Cause No. 01-15-00393-CR.

**CHRISTOPHER ERNEST BRAUGHTON, JR.'S REPLY BRIEF**

Niles Illich
SBOT: 24069969
The Law Office of Niles Illich, Ph.D., J.D.
701 Commerce, Suite 400
Dallas, Texas 75202
Telephone: (972) 802−1788
Facsimile:  (972) 236−0088
Email: Niles@appealstx.com

**ATTORNEY FOR**
**APPELLANT CHRISTOPHER**
**ERNEST BRAUGHTON, JR.**

1.     TABLE OF CONTENTS

1.  TABLE OF CONTENTS .................................................................................2

2.  TABLE OF AUTHORITIES .........................................................................4

3.  SUMMARY OF THE ARGUMENT..............................................................6

4.  ARGUMENT ...........................................................................................9

    FIRST RESPONSIVE ISSUE: THE STATE'S STATEMENT OF THE FACTS IS A PLEA TO RESOLVE THIS APPEAL ON EMOTION INSTEAD OF ON LAW AND REASON. ..............9

I.    Dispute with the State's Statement of Facts .........................................9

    SECOND RESPONSIVE ISSUE: THE STATE MISCHARACTERIZED APPELLANT'S ISSUE AND APPELLANT AND THE DISSENT USED THE CORRECT STANDARD .....................12

II.    Reply to the State's First Response ...................................................12

    A.  Grant of Review................................................................................12

    B.  Appellant's Argument in Opening Brief ..........................................12

    C.  State's Response ...............................................................................12

    D.  Appellant's Reply ...........................................................................13

    E.  Conclusion ......................................................................................17

    THIRD RESPONSIVE ISSUE: THE STATE FAILED TO ADDRESS THE ISSUE RAISED IN APPELLANT'S OPENING BRIEF ................................................................18

III.    Reply to the State's Second Response .............................................18

    FOURTH RESPONSIVE ISSUE: THE STATE WAIVED ITS OPPORTUNITY TO SEEK DISCRETIONARY REIVEW AND THE DECISION NOT TO ISSUE THE REQUESTED-LESSER-INCLUDED OFFENSE WAS ERRONIOUS AND HARMFUL ............................20

IV.    Response to the State's Fourth Issue ...............................................20

    A.  State's Request that this Court Grant Discretionary Review .........20

    B.  The Trial Court Erred in not Issuing the Requested Instruction on Felony-Deadly Conduct ...............................................................................21

        1.  State's Argument..................................................................21

2

2. Second Step of *Royster/Rousseau* Test ..........................................................21

3. Felony-Deadly Conduct ..................................................................................22

4. Facts.................................................................................................................22

5. State's Cases ....................................................................................................24

6. Appellant's Authority.....................................................................................26

7. Analysis ...........................................................................................................28

8. Harm Analysis .................................................................................................32

C. Conclusion ..........................................................................................................35

CONCLUSION ..................................................................................................................35

CERTIFICATE OF COMPLIANCE ......................................................................................36

CERTIFICATE OF SERVICE................................................................................................37

2.	T<small>ABLE OF</small> A<small>UTHORITIES</small>

<u>Cases</u>

*Barrios v. State*,
  389 S.W.3d 382, 400 (Tex. App.—Texarkana 2012, pet. ref'd)................. 24, 25

*Bignall v. State*,
  887 S.W.3d 21, 24 (Tex. Crim. App. 1994) ......................................................22

*Brewer v. State*,
  05-08-01082-CR, 2009 Tex. App. LEXIS 5871, 2009 WL 2274098, at *3 (Tex.
  App. Dallas—July 30, 2009, pet ref'd)...............................................................32

*Brooks v. State*,
  323 S.W.3d 893, 906-07 (Tex. Crim. App. 2010)......................................... 15, 16

*Cary v. State*,
  507 S.W.3d 761, 766 (Tex. Crim. App. 2016) ...................................................15

*Dixon v. State*,
  358 S.W.3d 250, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd)...........21

*Forest v. State*,
  898 S.W.2d 365, 368 (Tex. Crim. App. 1999) .............................................. 24, 25

*Goad v. State*,
  354 S.W.3d 443, 446–47 (Tex. Crim. App. 2011) ........................... 22, 27, 30, 31

*Green v. State*,
  14-06-00155-CR, 2007 Tex. App. LEXIS 4370, 2007 WL 1558731, *8; *24
  (Tex. App.—Houston [14th Dist.] May 31, 2007, no pet.) ........................... 25, 26

*Jackson v. Virginia*,
  443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) .......................................... 15, 16

*Jones v. State*,
984 S.W.2d 254, 258 (Tex. Crim. App. 1998) .......................................................23

*Kachel v. State*,
PD-1649-13, 2015 Tex. Crim. App. Unpub. LEXIS 402, \*4 (Tex. Crim. App. March 18, 2015) (unpub. op.) ........................................................ 22, 28, 32, 33

*Ortiz v. State*,
144 S.W.3d 225 (Tex. App.—Houston [14th Dist.] 2004, pet ref'd.) (*en banc*).. ............................................................................................... 26, 27, 29, 30

*Ramos v. State*,
865 S.W.2d 463, 465 (Tex. Crim. App. 1993) ......................................................21

*Sweed v. State*,
351 S.W.3d 63, 67 (Tex. Crim. App. 2011) ............................................. 21, 30, 32

## Statutes

TEX. CODE CRIM. PROC. 36.14 ..................................................................................32
TEX. PENAL CODE § 22.05(b)...................................................................................22
TEX. PENAL CODE § 22.05(b)(2) ..............................................................................22
TEX. PENAL CODE §22.05........................................................................................31

## Other Authorities

U.S. CONST., AMEND XIV, § 1..................................................................................11

## Rules

TEX. R.APP. P. 68.2(b)..............................................................................................20

# PD-0907-17

# IN THE COURT OF CRIMINAL APPEALS

# OF TEXAS

**CHRISTOPHER ERNEST BRAUGHTON, JR.**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee.**

**To the Honorable Judges of the Court of Criminal Appeals:**

Christopher Ernest Braughton, Jr., Appellant, respectfully presents this reply brief.

3.    SUMMARY OF THE ARGUMENT

Appellant presents four responsive issues. In his first responsive issue, Appellant contends that the State has made a transparent plea to resolve this case on emotion instead of reason and law. In the six and a half pages that comprise the State's "Statement of Facts" the State directly references—more than twenty-five times—the fact that Dominguez was a Marine. Although Dominguez's status as a Marine is undeniably tragic, it is ultimately irrelevant to the resolution of this appeal. Indeed, outside of its "Statement of Facts" the State does not reference this fact

6

again. Appellant trusts that this Court will recognize the State's plea to emotion and resolve this case on its merits.

In his second responsive issue, Appellant contends that the State's characterization of the standard of review used by Appellant and the Dissent as an attempt to blithely discard decades of precedent from this Court is misleading. Instead, Appellant and the Dissent utilized the familiar legal sufficiency standard that this Court has relied on for decades and Appellant asks this Court to do the same.

In his third responsive issue, Appellant argues that the State's response fails to address the issue that this Court granted review to consider. The State treated this issue as though it was a legal-sufficiency issue raised for the first time on direct appeal. But in his opening brief, Appellant attacked the intermediate-appellate court's reasoning in concluding that the evidence was legally sufficient. The State's response does not address this issue.

In his final issue, Appellant contends that the State's request that this Court grant a new ground for discretionary review is untimely and should be denied. In the alternative, Appellant contends that felony-deadly conduct was a lesser-included offense of murder on the facts of this case and that the trial court erred in denying the requested instruction and that this error was harmful. The error harmed Appellant because it prevented any juror (in a self-defense case) who believed that Braughton

7

acted "knowingly" and was unjustified in using deadly force from convicting Braughton of any offense other than murder.

4. A<span></span>RGUMENT

**FIRST RESPONSIVE ISSUE**

**I.      Dispute with the State's Statement of Facts**

It is an undeniable tragedy that Emmanuel Dominguez was a United States Marine.  But it is this Court's legal, ethical, and even moral duty to decide this case based on what happened on the night of May 23, 2013 instead of deciding in based on who Dominguez was.

In the State's "Statement of the Facts," the State uses the word "Marine Corps," "USMC," or "marine"[1] no less than twenty-five times in the span of six and a half pages.  [State's brief, 4-10].  The irrelevance of the fact that Dominguez was a Marine is emphasized by the fact that outside of the "Statement of the Facts" the State never again uses the word "Marine," "USMC," or any other reference to the Marines.[2]  The State's emphasis, in its "Statement of the Facts," on the fact that Dominguez was a Marine is a transparent plea to emotion; emotion should have no consequence for the resolution of this appeal.

The Majority opinion described Dominguez's conduct on May 23, 2013.  The Majority wrote that on that night that:

---

[1] In an unconventional style, the State uses a lowercase "m" for Marine.  See, page 4, page 5, note 6; page 6.  Although unconventional, Appellant does not dispute that the State is referring to the Marines.

[2] This does not include the references to the "Wounded Warrior Battalion."

- Dominguez took his live-in girlfriend to a series of bars, on a motorcycle, and drank so much that he was intoxicated to the point that he had twice the legal limit alcohol in his blood (.17 with a legal limit of .08) [Majority, 3];

- Dominguez quarreled with his live-in girlfriend and abandoned her at a bar [Majority, 3];

- Dominguez, drunk and on his motorcycle, got so close to the back bumper of the Braughton's car, while it was moving, to set off the "vehicle alarm" [Majority, 4; 5];

- Dominguez was wobbling on his motorcycle as he operated it [Majority 5-6];

- Dominguez passed the Braughton's vehicle, got in front of the Braughton's car, and then slammed on his brakes [Majority, 4];

- Mrs. Braughton called her son, the Appellant, and told him in a terrified voice that "Son, there's a guy chasing us. I'm scared." [Majority, 5];

- Dominguez "dismounted or fell off the motorcycle without engaging the kickstand, and then he either threw down the motorcycle or let it fall to its side in the street." [Majority, 5-6];

- Glen Irving, a witness who knew neither party, testified that after Dominguez got off of his bike "'rather quickly' approached the Braughton's car" [Majority, 6];

10

- Braughton Sr. then got out of his car and that he and Dominguez exchanged vulgarities. [Majority, 6]; and that

- Dominguez then beat Braughton Sr.'s face. [Majority, 6].

Whatever Dominguez's heroics may have been in the Marines, it is beyond dispute that on the night of May 23, 2013 that his conduct was dishonorable. The State's transparent effort to dismiss this lousy behavior is a plea to this Court to resolve this case on emotion instead of reason and law. The State's plea is fallacious (*argumentum ad passions*). Instead, while tragic, the fact that Dominguez was a Marine provides him with no special status before this Court. U.S. CONST., AMEND XIV, § 1.

Accordingly, the State's decision to emphasize Dominguez's status as a Marine in its "Statement of Facts" is an improper plea for this Court to resolve this case based on who Dominguez was rather than on what Dominguez and Braughton did on the night of May 23, 2013. Appellant is confident that this Court will not heed the State's appeal to emotion and will instead resolve this case based on its merits.

## II.     Reply to the State's First Response

### A.     Grant of Review

This Court granted review on this issue to determine, principally, "how should an intermediate-appellate court weigh the evidence to determine whether the State met its non-evidentiary burden of persuasion." [State's brief, 12].

### B.     Appellant's Argument in Opening Brief

In his opening brief, Braughton argued that in concluding that the State carried its non-evidentiary burden of persuasion that the Majority: failed to consider all of the evidence, engaged in rank speculation, and drew irrational conclusions. Instead of relying on such problematic reasoning, Appellant argued that the Majority should have used the established standard relied upon by the Dissent. [Opening brief, 29; generally 25-42].

### C.     State's Response

In its Response, the State contends that "appellant tacitly concedes that the majority opinion of the First Court of Appeals utilized the correct legal-sufficiency standard of review—thought appellant disputes the outcome of the majority's analysis. . ." [State's brief, 22]. The State then asks this Court to find that its members improperly granted review on this ground. [State's brief, 22].

12

D.     Appellant's Reply

The State wrongly but conveniently characterizes Appellant's argument as one that seeks to discard decades of precedent by advocating for a new standard that would permit a reviewing court to re-weigh the evidence and to sit as the "thirteenth juror." [State's brief, 23]. This argument misstates Appellant's argument and that of the Dissent.

Appellant argued that the intermediate-appellate court erred when it concluded that the evidence was legally sufficient to carry the State's non-evidentiary burden of persuasion based on the Majority's reasoning that:

1) "the jury could have discredited the testimony that Mrs. Braughton called Chris before the fight began—testimony undermined by the absence of any phone records demonstrating that it occurred or any data retrieved from any phone found at the scene;" [Majority, 32]

2) "the cut on Braughton Sr.'s lip and [the] presence of Braughton Sr.'s DNA on Dominguez's hand indicates only that Dominguez punched Braughton once;" [Majority 32]

3) that even if the Court credited the testimony that Braughton Sr. was punched three times by an extraordinarily intoxicated Marine, "the jury could have rationally concluded that Chris's use of deadly force was not immediately necessary for Chris to protect his father" because, by the third punch "Braughton Sr. was on the ground" and "Dominguez had no weapon and was not using his hands as deadly weapons, and was not kicking or jumping on Braughton Sr."

4) that "Braughton Sr.'s injuries—a bloody lip—were not serious" [Majority, 33]

5) Chris's mother's statement for him to put down the gun and her asking him "what did you do?" [Majority, 33]

13

6) that Dominguez had stopped punching by the time Braughton fired and that "the punches that [Dominguez] had <u>landed</u> on Braughton Sr. <u>up to that point</u> do not amount to deadly force that could create a reasonable belief that deadly force was necessary."

7) the Majority concluded, "In sum, Chris adduced no evidence that Dominguez used his hands in a deadly manner or used or threatened to use deadly force of any kind before Christ brought a gun to the encounter"  [Majority, 34]

[Opening brief, 29-30].

Appellant argued that these were inappropriate bases on which to conclude that the State carried its non-evidentiary burden of persuasion because these conclusions rely on: after the fact determinations, speculation, an ordinary disregard for the plain language of the statute, and the Majority's apparent willingness to allow a jury to act irrationally.  [Opening brief, 34-41].

According to the Dissent, when a reviewing court is tasked with deciding whether the State carried its non-evidentiary burden of persuasion, that court "must review all of the evidence that a *reasonable* jury would credit and must determine whether, in light of the evidence as a while, a reasonable jury could have found the essential elements of murder beyond a reasonable doubt and also could have found against appellant on his defensive issues beyond a reasonable doubt." (emphasis original).  [State's brief, 19].

According to the State, this standard conflicts with "*Brooks* and its progeny" and this standard allows a reviewing court to sit as a "thirteenth juror."  [State's brief,

19]. The State is wrong. Instead, Appellant and the Dissent argue that a reviewing court "must review all of the evidence that a reasonable jury [c]ould credit and then determine whether the evidence, as a whole would have allowed the jury to convict and to reject the claim of self-defense." This approach is entirely consistent with "*Brooks* and its progeny." *Brooks*' well known hypothetical is strong evidence that Appellant and the Dissent relied on the proper standard. In *Brooks* this Court wrote,

> A hypothetical that illustrates a proper application of the *Jackson v. Virginia* legal-sufficiency standard is robbery-at-a-convenience-store case:

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on all the evidence the jury's finding of guilt is not a rational finding.

*Brooks v. State*, 323 S.W.3d 893, 906-07 (Tex. Crim. App. 2010).

Further, the Supreme Court, in *Jackson*, wrote, ". . . the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979) (cited with approval in *Cary v. State*, 507 S.W.3d 761, 766 (Tex. Crim. App. 2016)).

Contrary to the State's argument, *Jackson* and *Brooks* establish that a reviewing court has a role, albeit limited, in evaluating the evidence. *Brooks*, 323 S.W.3d at 906-07; *Jackson*, 443 U.S. at 319.

Accordingly, Appellant and the Dissent do not naïvely ask this Court to overrule decades of precedent and to allow an intermediate-appellate court to sit as the "thirteenth juror." Instead, Appellant and the Dissent applied the legal-sufficiency standard established in *Jackson* and *Brooks* and ask this Court to do the same. To the State's dismay, this standard necessitates that a reviewing court consider whether, based on all of the evidence that a <u>rational</u> jury could have considered, the evidence was sufficient to carry the State's burden. This is exactly what Appellant and the Dissent sought to do in their respective analyses of the evidence. [Dissent, 23-24].

The Majority, however, veered from this standard. As a single example of a broader concern, the Majority relied on the speculative conclusion that "the jury could have discredited the testimony that Mrs. Braughton called Chris before the fight began." [Majority, 32]. But, if the jury was permitted to discredit this evidence, there is no evidence to explain why Chris came out of the home when he did, with a gun pointed in the air, yelling for Dominguez to stop hitting Braughton Sr. Instead, to discredit the evidence of the phone call, the jury would have had to have disregarded all of the affirmative evidence that the call occurred and instead

16

rely on speculation that on May 23, 2013, for no apparent reason, Braughton came out of his home after his parents returned from dinner so that he could murder a person who was previously unknown to him and who might serendipitously appear at the end of this cul-de-sac. Such a conclusion is irrational and entirely speculative based on the evidence presented to this jury. And such flawed reasoning cannot be used to find that the State carried its non-evidentiary burden of persuasion.[3] Instead, the intermediate-appellate court should have reviewed the evidence that a rational trier of fact could have relied upon and, based upon that evidence, evaluated the sufficiency of the evidence claim.

E.      Conclusion

Accordingly, the Majority—even if it argubaly articulated the proper standard—employed the standard erroneously. Appellant asks this Court to provide the standard for an evaluation of the evidence when an appellant has challenged the legal-sufficiency of the evidence as that evidence relates to the appellant's claim for self-defense. Because the standard used by the Dissent follows the established precedent, this Court should adopt the Dissent's standard.

---

[3] In his Opening Brief, Braughton explained why each of the conclusions, including this one, reached by the Majority was improper. Braughton does not repeat that analysis here and instead refers the Court to pages 34 through 41 of his Opening Brief.

THIRD RESPONSIVE ISSUE

## III.    Reply to the State's Second Response

Nearly every statement made in the State's reply to Appellant's second issue is factually correct.  [State's brief, 24-30].  But the State's argument is irrelevant to the underlying issue.  In his opening brief, Appellant contends that the reasoning used by the intermediate-appellate court was erroneous.  The State has treated this issue as if the argument is being made to the intermediate-appellate court for the first time.  [State's brief, 24-30].  To the contrary, the intermediate-appellate court has issued two opinions and it is the reasoning relied upon by the intermediate-appellate court in these opinions that Appellant attacked in his opening brief.

Specifically, Appellant argued that the intermediate-appellate court erred when it reasoned that the evidence was legally sufficient to carry the State's non-evidentiary burden of persuasion when the Majority concluded that:

1)  "the jury could have discredited the testimony that Mrs. Braughton called Chris before the fight began—testimony undermined by the absence of any phone records demonstrating that it occurred or any data retrieved from any phone found at the scene;" [Majority, 32]

2) "the cut on Braughton Sr.'s lip and [the] presence of Braughton Sr.'s DNA on Dominguez's hand indicates only that Dominguez punched Braughton once;" [Majority 32]

3) that even if the Court credited the testimony that Braughton Sr. was punched three times by an extraordinarily intoxicated Marine, "the jury could have rationally concluded that Chris's use of deadly force was not immediately necessary for Chris to protect his father" because, by the third punch "Braughton Sr. was on the ground" and "Dominguez had no weapon and was

18

not using his hands as deadly weapons, and was not kicking or jumping on Braughton Sr."

4) that "Braughton Sr.'s injuries—a bloody lip—were not serious" [Majority, 33]

5) Chris's mother's statement for him to put down the gun and her asking him "what did you do?" [Majority, 33]

6) that Dominguez had stopped punching by the time Braughton fired and that "the punches that [Dominguez] had <u>landed</u> on Braughton Sr. <u>up to that point</u> do not amount to deadly force that could create a reasonable belief that deadly force was necessary."

7) the Majority concluded, "In sum, Chris adduced no evidence that Dominguez used his hands in a deadly manner or used or threatened to use deadly force of any kind before Chris brought a gun to the encounter" [Majority, 34]

[Opening brief, 29-30].

Appellant argued that these conclusions were either speculative or improper after the fact determinations and that they were ultimately irrational. The State's response fails to address any of these points and never cites to the Majority or Dissenting opinion.

Accordingly, the State's argument on this point is unpersuasive and misleading.

19

## IV. Response to the State's Fourth Issue

### A. State's Request that this Court Grant Discretionary Review

The State asks this Court to exercise its discretion and to grant discretionary review on the question of whether, under the facts of this case, felony-deadly conduct is a lesser-included offense of murder. [State's brief, 30-37].

Rule 68.2(b) provided the State ten days in which to file its own petition for discretionary review after Appellant filed his petition. TEX. R.APP. P. 68.2(b). The State elected not to exercise this opportunity. Now the State asks this Court to review—without substantive briefing—whether felony-deadly conduct is a lesser-included offense of murder under the facts of this case. [State's brief, 30-37].

By any fair measure the State has waived this issue. As a preliminary matter, the State has waived the issue because the parties have not had an opportunity to brief this issue. But further, the State has provided no explanation for why, if this is an important issue, the State did not seek review when it had the opportunity to do so. *Id.* But the answer is likely that the State rightly believed that filing a petition under Rule 68.2(b) would have increased the chance that this Court would grant Appellant's petition and so the State made a strategic decision not to file a petition but now audaciously asks this Court to grant a late petition and to address this issue. Appellant respectfully asks this Court to decline this tardy invitation.

20

B.     The Trial Court Erred in not Issuing the Requested Instruction on Felony-Deadly Conduct

1.     State's Argument

The State contends that the trial court correctly denied the instruction on the requested-lesser-included offense of felony-deadly conduct. [State's brief, 30]. Relying on a series of misapplied cases, the State wrongly contends that "given that there was no evidence in the record that appellant did not intend to shoot Dominguez and cause him serious bodily injury, or that Dominguez did not actually die as a result of the shooting" the trial court correctly denied the requested-lesser-included instruction. [State's brief, 30-31].

2.     Second Step of *Royster/Rousseau* Test

In 2011, this Court described the second step of the test for the inclusion of a lesser-included offense, stating, "The second step of the lesser-included-offense analysis is to determine if there is some evidence from which a rational trier of fact could acquit the defendant of the greater offense while convicting him of the lesser-included offense." *Sweed v. State*, 351 S.W.3d 63, 67 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535–36. This step is satisfied by evaluating all of the evidence in the record and is inherently fact specific. *Dixon v. State*, 358 S.W.3d 250, 257 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd.) (*citing Ramos v. State*, 865 S.W.2d 463, 465 (Tex. Crim. App. 1993)).

In 2015, this Court characterized the evidentiary burden for this step as a "low threshold—a defendant need only show '[a]nything more than a scintilla of evidence' to support the lesser-included offense." *Kachel v. State*, PD-1649-13, 2015 Tex. Crim. App. Unpub. LEXIS 402, *4 (Tex. Crim. App. March 18, 2015)(unpub. op.)(*citing Bignall v. State*, 887 S.W.3d 21, 24 (Tex. Crim. App. 1994)). In this same opinion, this Court explained that ". . .we liberally permit a lesser-included instruction." *Id.*

In conducting this analysis, reviewing courts "consider neither the credibility of the evidence pertaining to the lesser-included offense, nor whether it conflicts with other evidence." *Goad v. State*, 354 S.W.3d 443, 446–47 (Tex. Crim. App. 2011).

### 3. Felony-Deadly Conduct

A person commits felony-deadly conduct if he: "knowingly discharges a firearm *at or in the direction of*: (1) one or more individuals;. . . " (emphasis added). TEX. PENAL CODE §§ 22.05(b), (b)(1), & (e).

### 4. Facts

Braughton's indictment alleged alternate ways in which he could have committed this offense. [CR 18]. The first way was by "intentionally and knowingly cause[ing] the death of Emmanuel Dominguez . . . by shooting [him] with a . . . firearm." [CR 18]. Alternatively, the State alleged that Braughton intended to

22

"cause the death of [Dominguez] by intentionally and knowingly committing an act clearly dangerous to human life, namely by shooting [him] . . . with a firearm." [CR 18].

The evidence produced at trial was sometimes contradictory, other times inconsistent, and occasionally incredible. But a jury, as the State has repeatedly argued in this case, has the liberty to believe or disbelieve any of the evidence that it received. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). The direct and circumstantial evidence in this case would have allowed a rational jury to find that Braughton did not commit murder and instead committed felony-deadly conduct. In this case, a rational jury could have:

1) believed that Braughton did not have a motive to shoot Dominguez; [7 RR 78]

2) believed that Braughton was so inexperienced with firearms that his parents insisted that he keep the gun in his mother's nightstand; [7 RR 75–76]

3) believed that Braughton went outside with the gun pointed in the air and yelled repeatedly, "Stop I have a gun;" [6 RR 93; 195; 7 RR 96]

4) believed that Braughton pointed the gun toward—or in the direction of—*but not at* Dominguez; [7 RR 84]

5) believed that Braughton knowingly discharged the gun; and, [7 RR 84]

6) believed that due to Braughton's inexperience with firearms and resulting poor aim that a fatal injury occurred in spite of Braughton's intentions. [7 RR 75-78].

23

### 5.     State's Cases

Principally, the State relies upon the familiar cases of *Barrios*, *Forest*, *Price*, and *Green*.

In *Barrios*, the Texarkana Court of Appeals determined that the defendant's testimony, which was apparently uncontradicted,[4] was that "he intended to shoot [the victim] in the hand." *Barrios v. State*, 389 S.W.3d 382, 400 (Tex. App.—Texarkana 2012, pet. ref'd.). Similarly, in *Forest*, "appellant was charged with intentional murder . . .. Appellant admitted he meant to shoot the victim 'in the butt' but claims that he did not intend to kill him." *Forest v. State*, 898 S.W.2d 365, 368 (Tex. Crim. App. 1999). Evidently, the testimony in these two cases that the appellant intended to shoot but not kill the victim was without contradiction. *See Barrios*, 389 S.W.3d at 400; *Forest*, 898 S.W.2d at 368.

Here, however, Braughton testified that he shot "Towards [Dominguez's] arm." [7 RR 84]. This testimony provides affirmative evidence that, if believed by the jury, establishes that Braughton did not commit murder and instead committed felony-deadly conduct. This affirmative evidence would have allowed a conviction only for felony-deadly conduct if the jury believed that Braughton did not intend the result of his conduct but that due to his inexperience with firearms, and resulting poor aim, Braughton knowingly discharged the firearm in the direction of

---

[4] These cases do not provide a careful description of the evidence.

24

Dominguez and the fatal injury occurred in spite of Braughton's intentions. Further, this affirmative evidence also distinguishes this case from both *Barrios* and *Forest* where the uncontradicted evidence was that the shooter intended to shoot—but not kill—the victim. *Barrios*, 389 S.W.3d at 400; *Forest*, 898 S.W.2d at 368. Accordingly, the evidence in this case distinguishes it from these cases and these cases fail to establish that Braughton was not entitled to the requested-lesser-included offense.

Similarly, in *Green*, the evidence established that the appellant "*was not trying to shoot in the air*, [and instead] he was aiming at the car [in which the complaining witness was a passenger], [the appellant] knew that there were four people in the car, and he knew that firing a loaded weapon at a car full of people was clearly dangerous to human life." (emphasis added). *Green v. State*, 14-06-00155-CR, 2007 Tex. App. LEXIS 4370, 2007 WL 1558731, *8; *24 (Tex. App.—Houston [14th Dist.] May 31, 2007, no pet.). In *Green*, the Fourteenth Court of Appeals concluded that "if believed, appellant's own testimony [only] demonstrates that he intentionally or recklessly caused the complainant's death." *Id*. at 26. Here, however, Braughton testified that he shot "Towards [but not at Dominguez's] arm." [7 RR 84]. Braughton's testimony is affirmative evidence that Braughton did not discharge the firearm to intentionally or knowingly cause Dominguez's death or with the intent to commit serious bodily harm. Instead, this evidence would have allowed a rational

25

jury to conclude that Braughton discharged the gun in Dominguez's direction without intending to hit him but due to his inexperience with firearms and resulting poor aim that Dominguez was nevertheless fatally injured. The conflicting testimony in this case distinguishes it from *Green* where the uncontradicted evidence was that the shooter intended to shoot the victim but not to cause death. *Green*, 2007 Tex. App. LEXIS 4370, 2007 WL 1558731, at *8; *24.

6. Appellant's Authority

In *Ortiz*, the Fourteenth Court of Appeals considered a factually similar case. *Ortiz v. State*, 144 S.W.3d 225 (Tex. App.—Houston [14th Dist.] 2004, pet ref'd) (*en banc*). In *Ortiz*, the State charged the appellant with murder but he was convicted of the lesser-included offense of felony-deadly conduct. *Id*. at 227. Appellant challenged his conviction on the basis that felony-deadly conduct was not a lesser-included offense of murder. *Id*. at 227.

Ortiz had been at a party where he had "overstayed his welcome." *Id*. As he left, "his car was showered with bottles thrown by the crowd." *Id*. "Appellant drove approximately one or two blocks, stopped the car, opened the driver's side door, pulled out a pistol, and fired several shots." *Id*. Appellant admitted that after he had driven a short distance, about a block, that he stopped and then fired two shots *into the air*. *Id*. (emphasis added). The Fourteenth Court of Appeals found that this satisfied the first prong for a lesser-included offense and then considered the second

26

prong. *Id*. at 234. In considering the second prong, the court wrote, "[t]hus the circumstances suggest that if appellant is to be believed, he did not fire straight up [into the air], but rather above the heads of the crowd, i.e., in the direction of one or more individuals. Thus a rational jury could conclude that appellant did not intend to commit serious bodily injury, but due to his poor aim . . . the victim was nevertheless fatally injured." (emphasis added). *Id*. Therefore the Court concluded that the evidence was sufficient to satisfy the second test and found that the trial court properly submitted the lesser-included offense of felony-deadly conduct. *Id*.

In *Goad*, the State charged the appellant with burglary of a habitation. *Goad*, 354 S.W.3d 444. Goad approached his neighbor purportedly concerned about a lost dog and Goad asked for permission to search the neighbor's home for the lost dog. *Id*. at 445. The neighbor declined Goad's request and fifteen minutes later the neighbor found Goad climbing through a window. *Id*. At trial, Goad testified that he was only looking for his missing dog and that he lacked the intent to commit theft. *Id*. The trial court denied the lesser-included offense of criminal trespass, but the intermediate-appellate court found that the decision not to grant the lesser-included offense was erroneous and reversed. *Id*. This Court held that Goad's claim that he was only looking for his dog "would permit a rational jury to believe that Goad was only looking for his dog when he entered [his neighbor's] home and [is] therefore sufficient to support a criminal trespass instruction." *Id*. at 447.

7. Analysis

Braughton provided the required scintilla of evidence necessary to satisfy the second prong of the *Royster/Rousseau* test. *Hall*, 225 S.W.3d at 536. This Court requires trial courts to grant lesser-included offenses liberally and has instructed reviewing courts not to consider whether the evidence supporting the submission of a requested-lesser-included offense is credible or conflicts with other evidence produced at trial. *See, e.g., Kachel*, PD-1649-13, 2015 Tex. Crim. App. Unpub. LEXIS 402 at *6.

Here, a rational jury could have found that Braughton did not commit murder as alleged in his indictment but rather knowingly discharged a firearm at or in the direction of Dominguez based on the following direct and circumstantial evidence:

(1) testimony from Braughton that he had never met Dominguez before the night of the shooting;

(2) testimony from Braughton and Braughton, Sr. and Melissa that Braughton was inexperienced with firearms, so much so that although an adult his parents insisted that he keep the gun in their room; [7 RR 75–78]

(3) testimony from Braughton that he left his parents' home with the gun pointed "in the air;" [7 RR 79–80]

(4) testimony from that Braughton, Braughton, Sr., and Irving that Braughton repeatedly said or yelled, "Stop I have a gun;" [6 RR 93; 195; 7 RR 96]

(5) testimony from Braughton and Irving that Dominguez claimed to have a firearm; [6 RR 93; 117–18; 196; 197–98; 7 RR 30; 81; 98]

28

(6) testimony from Braughton and Braughton, Sr. that after Dominguez claimed to have a firearm that he then reached toward his saddlebag and opened it; [7 RR 102–03]

(7) testimony from Braughton that he then lowered his gun and pointed it in Dominguez's general direction, specifically *towards* his arm but without aiming at any specific part of Dominguez's body, and fired one time; [7 RR 84; 100;109]

(8) testimony from Deputy D. Medina and Braughton that Braughton's gun held fourteen bullets but that he fired only one time;[3 RR 173; 7 RR 84]

(9) testimony from Braughton that the only reason he fired the shot was to "stop him;" [7 RR 101]

(10) testimony of Braughton, Sr. and Melissa that Braughton remained at the scene and identified himself as the person who fired the shot; and,

(11) testimony from the medical examiner that Dominguez was not standing immediately in front of Braughton when he fired the gun and photographs of Dominguez's body after he had been shot.

These facts render this case similar to *Ortiz*, in which the Fourteenth Court of Appeals found that felony-deadly conduct was a proper-lesser-included offense of murder. *Ortiz*, 144 S.W.3d at 227. Here, as in *Ortiz*, there is more than a scintilla of evidence that the shooter did not commit murder. Specifically, here, the circumstantial evidence establishes that Braughton sought to avoid shooting Dominguez: this evidence establishes that Braughton was inexperienced with firearms, when he exited his parents' home he did so with the gun pointed into the air, he repeatedly yelled for Dominguez to stop, and after the shooting he and his family tried to save Dominguez, and Braughton identified himself to the police as

29

the shooter and told the police where to locate the gun. [6 RR 93; 195; 7 RR 79–80; 96]. Further, as in *Ortiz*, Braughton provided direct evidence that he did not commit murder when he testified that he did not aim at a specific part of Dominguez's body and instead pointed the gun *toward* his arm. [7 RR 84; 100; 109]. Thus, based on the direct and circumstantial evidence, a rational jury could have concluded that Braughton did not intend to cause serious bodily injury or death but that due to his inexperience with firearms that he, nevertheless, shot and killed Dominguez. *Id*. This satisfies the second prong and entitled Braughton to the instruction on the lesser-included offense. *Sweed*, 351 S.W.3d at 68.

Even if this Court rejects the comparison with *Ortiz*, the case is similar to *Goad*. *Goad*, 354 S.W.3d at 447. In *Goad*, the appellant's testimony was that he only entered his neighbor's house through a window he had removed to find his missing dog. *Id*. This Court agreed that this testimony, however incredible, satisfied the second prong of the test for the inclusion of a lesser-included offense. *Id*. Here, the evidence is that Braughton was inexperienced with firearms, so much so that his parents required that he keep his gun in their room, and that Braughton fired the gun *toward* Dominguez's arm. [7 RR 75–78; 84; 100; 109]. This evidence is sufficient for a jury to have found that Braughton did not intend to cause serious bodily injury when he fired the gun toward Dominguez but that due to Braughton's inexperience with firearms that he nonetheless shot Dominguez. This evidence satisfies the

30

second prong of the test and entitled Braughton to the lesser-included offense. TEX. PENAL CODE §§ 19.02(b) & 22.05.

Further, circumstantial evidence that shows that Braughton did not knowingly or intentionally cause the death of Dominguez. *Goad*, 354 S.W.3d 451 (Alcala, J., concurring)(discussing role of circumstantial evidence in second prong of test for lesser-included offense analysis). Here, the circumstantial evidence supports the theory that Braughton did not intentionally or knowingly cause Dominguez's death. TEX. PENAL CODE § 19.02(b)(1). Instead, the circumstantial evidence would allow a rational juror to conclude that Braughton intended to get Dominguez to stop attacking his family without causing his death. Specifically, the evidence was that when Braughton first saw Dominguez hitting his father that Braughton pointed the gun into the air and yelled, repeatedly, for Dominguez to stop, that Braughton shot toward Dominguez's arm rather than his head or torso, that Braughton's family called 9-1-1, that Braughton remained at the scene, that Braughton identified himself as the shooter, and Braughton told the police where to locate the gun. This circumstantial evidence would have allowed a reasonable juror to determine that Braughton discharged a firearm at or toward Dominguez without the intent to cause his death and/or without the intent to cause bodily injury. TEX. PENAL CODE §§ 19.02(b) & 22.05. Therefore, this evidence satisfies the standard for the inclusion

31

of a lesser-included offense and the trial court erred in denying the requested instruction. *Sweed*, 351 S.W.3d at 68.

Accordingly, the evidence supports the submission of the lesser-included offense of felony-deadly conduct and the trial court erred when it denied this request.

### 8.    Harm Analysis

When a requested jury charge instruction is wrongly excluded from the jury charge, the error is harmful if it is "calculated to injure the rights of the defendant," which simply means that the error caused some harm to the accused. *Sakil*, 287 S.W.3d at 28; TEX. CODE CRIM. PROC. 36.14; *Schoelman*, 644 S.W.2d at 732 n.17. A reviewing court will reverse an objected to jury charge error or omission if it finds "any actual harm, regardless of the degree." *Brewer*, 2009 Tex. App. LEXIS 5871, 2009 WL 2274098, at *3.

The purpose of a lesser-included instruction is to avoid leaving the jurors with two "equally distasteful" options: (1) to acquit the defendant when they believed him or her guilty of the lesser-included offense, or (2) to convict the defendant of an offense that they did not believe he or she committed. *Kachel*, PD-1649-13, 2015 Tex. Crim. App. Unpub. LEXIS 402, at *4.

Here, the denial of the felony-deadly conduct offense in the jury charge required the jury to either find Braughton guilty of murder or manslaughter or to acquit him.  [CR 175–98].  The trial court's error harmed Braughton because it did

not permit jurors who might have been convinced that Braughton acted "knowingly" when he discharged his gun in the direction of Dominguez to find Braughton guilty of an offense less than murder. Jurors who believed that Braughton acted "knowingly," and considerable evidence supported this conclusion, could not have found Braughton guilty of manslaughter and were then faced with the predicament that this Court has sought to prevent being imposed on jurors: finding the defendant guilty of an offense that the jury did not believe he committed or acquitting him. *Id*. Therefore, the trial court's finding was harmful to Braughton.

To hold that the jury's decision to convict Appellant for murder rather than for manslaughter rendered the erroneous decision to deny Appellant the requested-lesser-included offense harmless required the Majority to conclude that "the jury legitimately believed that the defendant was guilty of [only] the greater, charged offense." *Masterson*, 155 S.W.3d at 171-72. Appropriately, but erroneously, the Majority opinion argues that "the intervening lesser-included offense of manslaughter served as an available compromise, affording the jury the opportunity to hold Chris accountable without having to find him guilty of murder. If the jury believed Chris lacked the requisite intent for murder, it would have convicted him only of manslaughter; its rejection of manslaughter (and Chris's defenses) indicate that the jury legitimately believed Chris committed murder." (cleaned up). [Majority, 54].

This analysis, however, fails to account for the mandatory presumption that the jury followed the jury charge "to its letter." The charge provided the proper statutory definitions for the words "knowingly" and "recklessly" and these definitions required the jury to reach distinct conclusions. [CR 176].

The evidence at trial strongly suggested that Appellant acted "knowingly" rather than "recklessly." That the evidence shows that Appellant acted "knowingly" is unsurprising because this is a case of self-defense where the principal issue was whether Appellant's deliberate shooting was justified. The decision to deny Appellant's request for felony-deadly conduct to be included in the charge deprived any juror—who believed that Appellant acted "knowingly" *and* who believed that Appellant was unjustified in shooting Dominguez—of convicting Appellant of any offense other than murder. Instead, the decision not to include felony-deadly conduct as a lesser-included offense left such jurors in the position of having to convict Appellant of murder or to acquit him—the exact predicament that this Court has sought to avoid.

Moreover, and for substantially the same reasons, the facts of this case echo this Court's admonishment in *Masterson* that, "the existence of an instruction regarding an intervening lesser offense does not automatically foreclose harm—because in some circumstances that intervening lesser offense may be the least plausible theory under the evidence. . ." *Masterson*, 155 S.W.3d at 171.

34

Appellant's case was contested as <u>a self-defense case—meaning that Appellant acknowledged knowingly or intentionally firing his gun but claimed that his decision was justified</u>.  In this case, it was far more likely that a juror, who was 1) convinced that Appellant's action was unjustified, 2) was convinced that Appellant acted "knowingly," and 3) was following the letter of the charge would have convicted Appellant of felony-deadly conduct rather than manslaughter. Therefore, under *Masterson* the trial court's error was harmful. *Id.*

C.    Conclusion

Because the State decided not to exercise its right to seek review under Rule 68.2(d) and has provided no explanation for its failure to do so, Appellant asks this Court to deny the State's requested petition for discretionary review.  Appellant also contends that the trial court erred in not granting the requested-lesser-included offense and that the error was harmful.

## CONCLUSION

Braughton contends that the evidence is legally insufficient to support a conviction of murder and he asks this Court to reverse his conviction and to render judgment acquitting him.  In the alternative, Braughton asks this Court to reverse the trial court's judgment and to render a judgment finding that Braughton committed a lesser-included offense such as manslaughter and then to remand the case to the trial court for a new hearing on punishment.

Alternatively, Braughton contends that the trial court committed reversible error in denying his request for the lesser-included offense of felony deadly conduct. Braughton asks this Court to reverse the trial court's decision and to remand this case for a new trial.

Respectfully Submitted,

/s/ Niles Illich

Niles Illich
SBOT: 24069969
Law Office of Niles Illich, Ph.D., J.D.
701 Commerce
Suite 400
Dallas, Texas 75202
Direct: (972) 802−1788
Facsimile: (972) 236−0088
Email: Niles@appealstx.com

CERTIFICATE OF COMPLIANCE

This is to certify that this brief complies with Rule 9.4 of the Texas Rules of Appellate Procedure because it is computer generated and the combined briefing does not exceed 27,000 words. Using the word count feature included with Microsoft Word, the undersigned attorney certifies that his opening brief contains 15,082 words but when the sections exempted by Rule 9.4(i)(1) are removed, the brief contains 12,785 words. This reply brief contains 7704 words. Accordingly, the combined briefing in this case by Appellant is 20,509 words, less than the 27,000 allotted. Additionally, this brief also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using Microsoft Word in 14-point Times New Roman font for the text and 12-point Times New Roman font for the footnotes.

/s/ Niles Illich
Niles Illich

CERTIFICATE OF SERVICE

This is to certify that on March 7, 2018 that a true and correct copy of this brief was served on lead counsel for all parties in accord with Rule 9.5 of the Texas Rules of Appellate Procedure. Service was accomplished through an electronic commercial delivery service as follows:

Melissa Stryker
Harris County District Attorney's Office
1201 Franklin Street
Suite 600
Houston, Texas 77002-1923
Email: STRYKER_MELISSA@dao.hctx.net
**Counsel for the State**

Stacey Soule
State Prosecuting Attorney
P.O. Box 13046
Austin, Texas 78711
Email: information@spa.texas.gov
**Counsel for the State**

Brady Thomas Wyatt, III
Law Office of Brady T. Wyatt, III
3300 Oak Lawn Ave., Suite 600
Dallas, Texas 75219
Email: Attywyatt@hotmail.com
**Counsel for the National Rifle Association of America, Inc.**

David H. Thompson
John D. Ohlendorf
Haley N. Proctor
Cooper & Kirk, PLLC
1523 New Hampshire Ave., N.W.
Washington, D.C. 20036
Email: dthompson@cooperkirk.com
**Counsel for the National Rifle Association of America, Inc.**

Sean Patrick Healy
Healy Law Offices, P.C.
113 E. Houston Street
Tyler, Texas 75702-8130
Email: genghis@healylaw.com
**Counsel for the Texas State Rifle Association**


<u>/s/ Niles Illich</u>
Niles Illich